Good morning, your honors. My name is Ethan Barlow, and I, this morning, speak for William Billow Appellant. I'm going to watch my own clock. I'm going to do my best to reserve one minute for rebuttal, and if I can, I'm going to try to squeeze a minute into addressing the supervised release issue, but I'd like to dedicate most of our time this morning to the Fourth Amendment challenge. And Mr. Billow contends on appeal that the warrant at issue here is essentially is a general warrant, and at issue, the warrant violated the Fourth Amendment's reasonableness clause, particularity clause, and overbreadth clause in a couple of distinct ways. We think there's three errors which establish that not only did the magistrate judge abandon his judicial function, but that nothing seized from the warrant could be properly used at trial. Let's begin with particularity. Category one of the warrant permitted the government, permitted the state to seize any and all information, whether stored electronically as computer data or on paper, period. The warrant was a general warrant. It allowed the police to take every piece of paper, every piece of electronic data that was in Mr. Billow's home. At the same time, it violated the particularity provisions or protections that the Fourth Amendment provides. The warrant was also overbroad. Fully nine of the 14 categories of materials authorized for seizure were either not supported by probable cause because they related to matters other than the distribution or possession of trial pornography, the only subject matter for which the police had probable cause. They related to other subject matters or because they provided for a plenary seizure of electronic information without making necessary showings that this Court has approved in Hill, Hay, and Lacey. Mr. Billow, before you get to the merits of that, don't you have to get around the waivers? Well, I don't think it's a waiver. I do. The good cause waiver, yes, Your Honor. I do have to get around that. And as this Court has recognized, Rule 12 makes plain that by not failing to make this, raise the issue that we're presenting now to the district court by divesting Judge Timlin the opportunity to pass upon it, typically this issue would be waived. But this Court has also recognized, and the government does not contest, that ineffective assistance of counsel provides good cause for a waiver of that right. What kind of burden do you have to bear? I understand what Strickland is. What kind of burden do you have to bear in this case to show that the attorney was ineffective? I have to show one of two things, or one of three things. One, I have to show either that the record is sufficiently developed that this Court can make the determination that it was. No, that's just procedural. What substantively have you got to show about this attorney? Have you got to show that this is a winning argument? Yes. I must show my argument has merit. If my argument, and the government has collapsed and agrees that the argument collapses to the merits. If I have a winning Fourth Amendment argument, the Court should reach it and grant relief. If my argument has no merit, then there's no harm. But sometimes even when you have, when an attorney has a meritorious argument, an attorney may choose not to bring it. That's one of the reasons that we have these waiver rules. Well, yes and no. I think the second part of it is whether or not there's any strategic reason, if there's any basis. And for two reasons, I don't think that would apply to this case, Judge Leiby. One, the record is plain before the last status conference that this attorney, Mr. Cannon, was struggling to find any defense at his client's directive. And this Court has made plain that if there's no downside of this, absolutely zero benefit not to raising an argument, it can't be strategic. In this case, you had a client who was demanding a trial, demanding fighting the charges, an attorney who could not find a defense when one was staring him in the face. He said the evidence was overwhelming, and unless he could find a defense, this is a quote, he would just shrug his shoulders and say, reasonable doubt. And then he promised the judge he would come up with an expert, and he gave him a continuance, and Judge Timlin gave him that continuance. And then when Hefty showed up after that three-month continuance, he broke his word to Judge Timlin, had no expert, and then shrugged his shoulders and said, reasonable doubt. Obviously, Judge Timlin was unmoved and convicted Mr. Billow. At that time, there was a meritorious Fourth Amendment motion which would have disposed of the evidence. And quite frankly, when the evidence is overwhelming against your client, or when your client has confessed in a way that's unimpeachable, every lawyer knows the only option is to challenge the admissibility of the evidence, either constitutionally or evidentiary. But those are only two options. In this case, Mr. Cannon never even read the first word of the warrant which said the government could seize everything, which is the definition of a general warrant. Why isn't it limited both by paragraph 12 in the warrant and by the affidavit, which was incorporated by reference? The affidavit in no way limits number one. No, but number 12 probably is valid, and especially in light of the affidavit that's attached. And given that paragraph 12 is likely valid, then this information could have all been seized anyway. Well, if you're talking about severance or honor, I would disagree with that. If we were arguing about drugs that were found, you know, under the mattress, that would be a whole different argument about the general warrant. But the material that was seized was the stuff that the police, in fact, were looking for, and that would have been covered by paragraph 12. Yes and no, Your Honor. Let me respond to severance in a couple of ways. One, the government, in essence, if you take a look at the affidavit, you want to look at the government's reference to Penal Code Section 311.3 and 311.11. And they're saying this was governing Agent Wald. If you look at the government's brief 15 to 19, if you look at the PSR, which they cite, paragraphs 22 to 27, they harp before this Court on the importance of their finding drawings that Mr. Billo possessed or made, stories depicting disfigurement, mutilation, terrible stories that he possessed or made. What part of the warrant authorized that? Penal Code Section 311.3 is about sexual exploitation of minors and requires actual minors. That statute didn't permit it. Section 311.11d expressly says the government cannot seize drawings. That didn't authorize it. But even as we sit here on appeal, the government is touting this evidence seized illegally as something Agent Wald could properly seize. And the only reason he could seize it was because of paragraph 1. And that shows there was no guidance. That's the abandonment of the judicial function, which means the warrant is a nullity and we don't get to severance. And that's Decker out of the six. Did the government rely in any way on the drawings? Before this Court, they're relying on them right now. Counsel, to convict him of possession of child pornography, those drawings would not have been relevant. It was the other images they took from the computer that were valid to be taken under Category 12 that were the basis of his conviction. They were selective in what they presented to the Court. But before we get to severance, there's the judicial abandonment challenge, which under Coolidge and Decker says, if a magistrate judge had no business signing this, if a magistrate judge either didn't read it closely or rubber-stamped it, the warrant doesn't exist. And we're relying on that authority, Decker and Coolidge, to say, this warrant is so infirm that no reasonable magistrate could be said to have performed his or her role as a neutral and a detached magistrate to permit this, to get past Category 1 without striking, interlineating, it says, I rubber-stamped it. And Mr. Billow was constitutionally entitled to a jurist who didn't do that and who focused on what his task was at hand and would have seen that this was overbroad and infirm. One of the things I also want to note, to the extent the Court wants to address either the canon challenge or the scope of the search, at least the most minimal step the Court should take is remand for the good cause determination. We recognize that under Reyes-Platero, this Court cannot remand for a habeas challenge, but this Court has never addressed a good cause challenge. And I would ask the Court to read Reyes-Platero as well as Johnson, because Reyes-Platero says Johnson compelled that there can never be a remand for habeas, which is not what Johnson said. But in any case, the Court may absolutely remand for evaluation of the good cause challenge. Just a minute. I just want to get clear on what your position is on whether we should reach the Strickland claim. It's your position that the record is sufficiently developed on the issues that have to be decided, that it's ripe for decision right now. Absolutely. Right? And is that because that goes to the merits of the warrant, the merits of the search, and not to whatever decisions counsel may have had for foregoing the motion? I would say it's both. I think because the government agrees it all rises and falls on the merits of our claim, it's the most efficient way, and this will resolve it. But at the same time, I think Mr. Cannon's comments on the record and the fact that there is no conceivable reason not to bring a meritorious forthcoming challenge when the lack of – when the entry of the evidence will convict your client, it's sufficiently developed to reach the ineffectiveness of the client's claim. I'm going to try to save my last minute, if I may, Your Honors. Of course. Thank you. Good morning. May it please the Court. My name is Ariel Newman. I represent the United States of America in this matter. To begin, I'm not sure why counsel is saying that the government concedes that this claim rises and falls on the merits of the Fourth Amendment – the Fourth Amendment claim. The government's position is that there just simply is not a sufficient record for this Court to reach the merits of the motion – oh, I'm sorry, of the search warrant and the – what is basically now a motion to suppress the search warrant. Wait. Say it again. The record is insufficient to – For this Court to reach the merits. The merits of the Fourth Amendment issue? Yes. What more do we need? Well, we would need some record of why the counsel before the district court didn't bring this motion. Well, that's apart from the merits of the motion. I mean, you know, you could have – well, the reason – as I understand Mr. Bella's position, well, I mean, the evidence was so bad, there couldn't conceivably be any reason not to bring the motion. So if we start from there, then the question is, right, was the motion good or not? And I would respectfully disagree with Mr. Bella that that is – that we get to that point for a few reasons. First of all, it's not so clear – the government's position is that it's not so clear that this warrant was deficient on its face. Okay. That goes to the merits. Right. I'm trying to figure out with Judge Tsushima what on earth defense counsel could – what strategic reason defense counsel could possibly have for not making a motion to suppress in this case? For instance, in another case where we had a defense lawyer didn't want to put in an affidavit from his client acknowledging that the house where the items were found was that client's house or was that client's room. It didn't have that defense here. That wasn't even close. Well, the point is we don't know. We don't know. Potentially, the defendant didn't tell the lawyer not to file this motion. We just don't know. And the government's willing to stipulate that this was his house, right? The government – of course we're willing to stipulate. Yeah, okay. Well, if you're agreed and he's agreed, I don't see what the problem is. Well, he would – in the central district, he would have to put in a declaration acknowledging that it's his house, which he could then, if he ever testified, be cross-examined with. That's the point. And that's just one example. And the point is we don't know. And that's why we say there's not a sufficient record to reach the merits. If the court is going to reach the merits, the government's position is still that the warrant is not so overbroad that it warrants suppression. The defense here is trying to pull one sentence out of an entire warrant that should be read in context, that should be read as a whole. Judge Bybee, you talked about the affidavit and paragraph 12 limiting it. All of these things do limit exactly what was going on with this search. In addition, the affiant himself was at the search. He conducted the search. The items seized were only evidence of child pornography, possession, and distribution. So all of that combines to indicate that this was not an overbroad search in this case. In addition – If we think that the warrant is overbroad but that the search itself was controlled, does that affect our judgment? If the court were to conclude that the entire – were very controlled and self-controlled in their search, very focused, what happens? That would – suppression would be warranted. Okay. So the general warrant and paragraph 1 does appear to be overbroad under just about any standard. I would agree that paragraph 1 alone appears to be overbroad. But all of the cases, and we cite them in our brief, show that paragraph 1 should not be read in isolation. And specifically here the defense is trying to read the first sentence of paragraph 1 in isolation from the rest of the warrant and the rest of the affidavit. So, yes, if that was the only search category, seizure category, excuse me, then yes, suppression would be warranted. But here we don't have that. Here we have a limitation to specific sections of the penal code, which is similar to what they had in the Hay case. We have specific seizure categories that even the defense concedes are supported by probable cause. And each of those categories, and I point the Court to categories 2, 7, 9, 10, and 14, which even the defense concedes are supported by probable cause and are sufficiently particular, all of the items seized could have been seized under those categories. And so the severance doctrine would indicate that even under their concessions, at this point suppression wouldn't be warranted. It's my understanding that the materials that were used at trial were images taken from the computer and so if category 1 is too broad specifically with any and all information stored on paper, why can't that be severed and the rest of the warrant still be good? It's our position that it could be severed. That's exactly right. And I think there were also, if I recall from the record, some photographs taken from disks that were possessed at the home as well. But the point being they were all digital photographs. So the government would agree with that position, Your Honor. What about the drawings? The drawings weren't used at trial, as the Court noted. They would also, quite frankly, they would be relevant to show the dominion and control and the defendant's possession that it was, in fact, him possessing these items that were on the computer. But in this case they weren't used at trial, so I would submit that it's kind of a side point in this case. By the way, it seems to me you can't tell from the record whether or not the affidavit was attached to the warrant. Is that a fair statement? There's no statement that you mean when it was served? Yeah. I'm not sure if that's in the record of whether it was attached, but it is incorporated by reference specifically. Well, I guess the question I'm going to get, in other words, was it available, the affidavit, to the executing officer? It was, because the ---- How do we know that? Well, the affiant was the lead officer executing the search. So whether he had it there with him at the time, the affidavit specifically, I would have to go back to the record and see if there's any evidence of that. But in terms of whether it was available, I think we can conclude at least that there's a reasonable likelihood that it was. And then one last point that the defense counsel raised is regarding whether this warrant is so infirm that the magistrate simply abandoned that responsibility. I think, really, given what's pretty clear showing a probable cause as to the child pornography crimes going on here, it's very difficult to say that the magistrate  Counsel, what about the 2,000-foot limit? Aren't our cases pretty clear that that's overbroad? The cases are clear at this point that some explanation from the record or some explanation specific to why that residency restriction was imposed is required or some explanation from the record is required. So don't we have to remand it on that, even if we affirmed everything else? Well, I'm not sure we do. I think that the record is sufficient for the Court to conclude that there was a basis for this residency restriction to be imposed. I don't need to go through the concerns about this defendant that were very significant in this case, and the district court specifically cited those. Is there anything in the district court's discussion of this that suggests that the district court was aware of our questions about 2,000-foot limits? Is there anything that said, I acknowledge the Ninth Circuit has had questions about 2,000-foot limits before. Let me explain why I think that's appropriate in this case. There's nothing in the record, and I would submit that part of the reason for that is that the sentencing hearing in this case occurred before at least some of those questions were raised. Rudd and Collins, which are two of the main cases on point, were in 2011 and 2012. This case, the sentencing hearing was in 2010. So that may be one reason at least why it wasn't raised, and that's also one of the reasons why originally we were saying it wasn't plain error, but now obviously we need to acknowledge the Henderson decision and the fact that at this point it is plain error except, and this is the one point I do want to come to on Henderson, which is that the amount of explanation or justification in the record and the specific distance imposed is exactly the type of thing that Henderson talks about a matter of degree and not kind. And the amount of explanation, the distance imposed is a matter of degree. So it's not clear that the error even at this point is plain before this Court. So we would submit on that why this Court doesn't necessarily need to remand on the 2,000-foot residency restriction. Thank you, counsel. Thank you, Your Honor. Mr. Vallow? Vallow, Your Honor. Vallow. Anything but, counsel. Thank you, Your Honor. I'll be brief if I may make four points in regards to the substance of the Fourth Amendment challenge. One of the things my colleague said, he said a few moments ago, the only evidence seized was about child pornography. Obviously that's not true. We talked about the drawings and the stories. That's not child pornography. And I didn't really understand the government's response of, well, that was relevant to possession and control. I don't know what that means, why stories in the House would show Billow owned the stories or Billow purchased the stories. More importantly, I want to get to Your Honor's points that Paragraph 12 isn't infirm. Paragraph 12 is infirm in and of itself. To get a plenary search under Hay, Hill, and Lacey, and I would refer the Court to the latest of those decisions, Hill, which had a great discussion of Judge Kaczynski as a trial court judge in this courthouse, then being appealed and decided by Judge Fischer in a panel. You have to have a preamble. You have to explain to the magistrate judge why that plenary search is necessary in this case. That ensures the Fourth Amendment's oversight function. And in the absence of that portion of it in an affidavit, which is absent here, Paragraph 12 is infirm. So we would disagree that you can get there from Paragraph 12. The second thing I would like to say, the point I would like to make, is Category 1, they say, I'm isolating the first court that's saved by the second sentence. The second sentence doesn't limit the first sentence. But even if it did, the second sentence allows seizure of all pornography. Not child pornography. And we all know pornography is illegal. So that in and of itself doesn't say that that's the same overbroad general warrant that we're concerned about, which demonstrates abandonment of judicial function. The third point I would make, I'd go back to Paragraph 12 because I know the Court's interested in it. With all due respect, the severance isn't whether we can find one category to save this search. The question is whether what is invalid is insignificant. Is it an insignificant part of it? And that's the loto by this Court. It's been cited time and again in other cases. In this case, nine of 14 categories are infirm because they're in particular overbroad. You can't say that's an insignificant part of the warrant. And once you get there, even if you reject my claim of rubber stamp, my claim of judicial abandonment, still severance would be inapplicable because so much of this warrant is infirm. To allow it is to not prevent the abuses of a general warrant. The last point I wanted to make was to address Judge Tashima's point. I think the record is unclear as to whether or not Agent Wald had the affidavit with him at the time of the search. That is the one thing that is unclear. I agree with my colleague that it was available to him because he authored it. But whether it was available to him and the agents exercising the search on January 10, 2007, is an open question which is not resolved by the record. I'm over time. Do you want me to respond? I don't think I need to. The column's in a rut. I think we should have a minimal remand for that. Let's act in accordance with his patience. Thank you. We thank both counsel for the argument. The bill is submitted.
judges: Bencivengo, Tashima, Bybee